IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LATONYA MCCURDY,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ]   CV-07-BE-869-E |
| | ] |
| **HONDA MANUFACTURING OF** | ] |
| **ALABAMA, LLC, TRI STAFFING,** | ] |
| **INC. and ELWOOD TRI., INC. d/b/a** | ] |
| **TRI STAFFING,** | ] |
| | ] |
| **Defendants.** | ] |

**MEMORANDUM OPINION**

This case comes before the court on "Defendants' Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment on Plaintiff's Claims" (doc. 28). The parties have fully briefed the motion. Plaintiff Latonya McCurdy asserts that the Defendants terminated her because of her race and in retaliation for her complaints of racial harassment, in violation of Title VII and 42 U.S.C. § 1981. For the reasons stated below, the Defendants' motion for summary judgment (doc. 28) will be GRANTED IN PART and DENIED IN PART as articulated in this opinion. A separate order to that effect will be entered simultaneously.

**FACTS**

Honda Manufacturing of Alabama (HMA) employs approximately 4500 associates at its Lincoln, Alabama, plant. The Lincoln plant assembles Honda Odyssey and Pilot vehicles. To provide addition manpower, HMA contracts with Elwood TRI, Inc., formerly known as TRI Staffing, who assigns approximately 860 TRI associates to HMA. Both HMA and TRI have

1

policies prohibiting discrimination and retaliation.

At HMA, TRI has a project manager, Alan Balmer, and on-site supervisors, Robin Webb, BB Davis, and Jan Smith. TRI associates work with HMA team managers and team coordinators to perform their production processes. HMA team coordinators act as "lead" persons who assist in scheduling processes for shifts and help the workers follow operation standards. HMA team managers supervise the production workers to ensure that the line runs smoothly and the workers follow operation standards.

The TRI on-site supervisor conducts performance evaluations for TRI associates working at HMA. HMA team managers also provide feedback about TRI associates' performance during evaluation cycles. If a TRI associate is rated as "below expectations," TRI may end that associate's assignment with HMA, and the associate would not be eligible to seek employment with HMA.

At the outset of their assignment with HMA, TRI associates receive an Assignment Guidebook. Plaintiff Latonya McCurdy does not recall receiving the Assignment Guidebook, but she admits she probably did receive it in February 2005. The Guidebook explains that TRI associates should report to the TRI on-site supervisor for questions or concerns relating to attendance, payroll, injury reporting, associate relations, and benefits. The Guidebook explains that TRI associates should report to the HMA team coordinator or team manager for questions or concerns relating to safety, quality, productivity, overtime schedules, and injury reporting.

TRI associates who complete a certain number of hours, fulfill attendance requirements, and receive satisfactory performance evaluations may submit an application for employment at HMA. Even if the TRI associate meets all the prerequisites for a position, employment with

HMA is not guaranteed. Plaintiff McCurdy understood that if she met certain performance expectations and attendance criteria she would be eligible to apply for a position with HMA.

Plaintiff McCurdy applied for employment with TRI on January 12, 2005, and she began her TRI assignment at HMA on February 3, 2005. She was assigned to work in Paint Line 2 in the topcoat booth. Associates in Paint Line 2 ensured that paint was applied to the vehicle without touchmarks, sags, or other defects. Job responsibilities of Paint Line 2 included taping, dusting, spraying, painting, sanding, and repairing quality defects. To prevent injury, compensate for absent employees, and ensure quality, associates on Paint Line 2 rotated among the various job responsibilities over the course of a shift.

When Plaintiff McCurdy was first assigned to Paint Line 2, her HMA team coordinator was Jason Stone. Bob Burton became the team coordinator in the summer of 2005. When she first began working on Paint Line 2, Steven Johnson was the HMA team manager for her area. Eddie Yarborough became the team manager in November 2005.

Plaintiff McCurdy received training when she began her assignment with HMA, and she had no complaints. After she began her assignment with HMA, she received additional classroom training called AIDT. In July 2005, she received her performance evaluation and was recommended for continued assignment. She discussed her evaluation with the on-site TRI staff and had no complaints about it.

In December 2005, Alan Balmer completed McCurdy's second performance evaluation, which reflected a "below expectations" rating, based on information from Eddie Yarbrough. McCurdy disagreed with the evaluation's comments, and she believes she told her TRI supervisor that she thought the comments in the evaluation came from Bob Burton, whom she

believed to be a racist. Plaintiff McCurdy was told she did not have to sign the evaluation because Yarbrough had been her team manager for only a month when the evaluation was completed.

Plaintiff McCurdy was reevaluated in January 2006. Her performance evaluation at that time reflected a "meets expectations" rating, with comments stating that she had improved. The evaluation still noted that she had eight attendance or punctuality violations. She had no complaints about her January 2006 evaluation.

She received warnings about paint quality defects in January and March 2006. One warning cautioned her about touchmarks in the paint; the other cautioned her about clear coat sags that she had not fixed after six attempts. Bob Burton also noted problems with her not returning to the line on time after breaks, not wearing the uniform properly, and not complying with operation standards.

Plaintiff McCurdy first complained of racial discrimination to a TRI representative in December 2005. She contends that Bob Burton shouted at her, referred to her as "gull" or "little gal," put his hands on her and shook her shoulders while talking to her once, belittled her when correcting her mistakes, and would call her using curse words. She asserts that Burton did not act this way with the Caucasian women who worked at HMA. She also contends that Burton would assign the African American employees to multiple rotations of painting throughout a shift, while he would allow Caucasian employees to do rotations of dusting or other less strenuous tasks.

Plaintiff McCurdy twice informed Yarbrough about Burton's conduct, and Yarbrough discussed her concerns with Burton. After these discussions with Yarbrough, Burton apologized for his conduct. The last incident, when Plaintiff McCurdy alleges that Burton shook her

4

shoulders to speak to her, occurred on Wednesday, May 31, 2006. She complained to Yarbrough about the incident, and Yarbrough assured her he would speak with Burton and get back to her. She and Yarbrough never spoke about the incident again, because she was fired on the following Friday, June 2, 2006.

Allegedly based on performance information provided by Yarbrough, Webb completed a performance evaluation on Plaintiff McCurdy on June 1, 2006. This June 1 evaluation reflected a "below expectations" rating. Webb spoke with Balmer regarding Plaintiff McCurdy's second "below expectations" rating as well as her performance and quality issues. Balmer then spoke with Jackie Jones of HMA Associate Relations, and they agreed that Plaintiff McCurdy's assignment with HMA should be terminated. TRI informed Plaintiff McCurdy of her assignment termination on June 2, 2006.

Plaintiff McCurdy spoke with Balmer the following Monday regarding her assignment termination. Balmer told her she should make a written statement about what had happened between her and Burton so that the matter could be investigated. Plaintiff McCurdy never made such a written statement. TRI notified HMA of Plaintiff McCurdy's termination.

Prior to her receipt of any unfavorable evaluation, Plaintiff McCurdy completed an application for employment as an HMA associate on September 1, 2005. She completed the telephone screen on October 17, 2005, and Lynn Johnson, an associate with HMA's staffing department, interviewed Plaintiff McCurdy on November 9, 2005. HMA completed her background check on December 21, 2005. Plaintiff McCurdy received a conditional offer of employment from HMA on May 24, 2006, meaning that she was placed in a pool of "good-to-go" candidates from which the company could fill future positions. As a result of her assignment

termination by TRI, HMA sent her a letter on June 7, 2006, withdrawing her conditional offer of employment.

Plaintiff McCurdy filed this action asserting claims of racial discrimination and retaliation under Title VII and 42 U.S.C. § 1981. Defendants HMA and TRI Staffing filed a motion for summary judgment. The parties have fully briefed the motion.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility

determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## DISCUSSION

Plaintiff McCurdy asserts that HMA and TRI discriminated against her on the basis of race throughout the course of her employment, in violation of her rights under Title VII and 42 U.S.C. § 1981. Specifically, she asserts that HMA and TRI disciplined her, unfairly assigned her certain tasks, gave her poor performance evaluations, and ultimately terminated her because of her race. Plaintiff McCurdy also asserts that, because she reported her claims of racial discrimination, HMA and TRI retaliated against her by terminating her and refusing to hire her as a permanent HMA employee.

**I.      Race Discrimination**

The court analyzes claims of race discrimination under § 1981 in the same manner as claims brought under Title VII. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). One way to establish a claim of racial discrimination is through direct evidence. *Burrell*

*v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). If the plaintiff cannot prove discrimination by direct evidence, as in this case, the plaintiff must establish her prima facie case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

      A.      **Prima Facie Case**

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802. A plaintiff can establish a prima facie case of racial discrimination based on disparate treatment by showing that she belongs to a racial minority, she experienced an adverse job action, her employer treated similarly situated employees outside her classification more favorably, and she was qualified to do the job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). The parties do not dispute that Plaintiff McCurdy, as an African-American, belongs to a racial minority. HMA and TRI dispute that she experienced an adverse job action and that similarly situated employees outside her classification were treated more favorably.

      1.      **Adverse Employment Action**

Plaintiff McCurdy argues that she suffered an adverse employment action, because HMA and TRI disciplined her more frequently, unfairly assigned her certain tasks, gave her poor performance evaluations, and ultimately terminated her employment, all because of her race. "[T]o prove adverse employment action in a case under Title VII . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Butler v. Ala.*

*Dept. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008) (internal citations, quotation marks, and emphasis omitted).

Plaintiff McCurdy first argues that she and other African-American employees on the Paint Line 2 were required to perform the painting duties more often than the Caucasian employees. She admits, however, that painting is one of her job duties as a member of the Paint Line 2 and that Caucasian employees were also regularly required to perform painting duties. "Requiring an employee to perform her job is not a change in the terms, conditions, or privileges of her employment." *Butler*, 536 F.3d at 1215. The court finds that Plaintiff McCurdy has failed to show that her job assignments constitute an adverse employment action; she, therefore, cannot establish a prima facie claim on this ground.

Plaintiff McCurdy also asserts that she received quality violation warnings and poor evaluations because of her race. She admits, however, that she had trouble with certain painting tasks and that she had been absent or tardy from work. As the Eleventh Circuit has stated,

> A Title VII discrimination claim 'rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment. An employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation. But the protections of Title VII simply do not extend to everything that makes an employee unhappy.'

*Butler*, 536 F.3d at 1216 (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001)). The court finds that Plaintiff McCurdy has failed to show that her quality violation warnings and poor performance evaluations constitute an adverse employment action; she, therefore, cannot establish a prima facie claim on this ground.

Plaintiff McCurdy also asserts that she was terminated and denied the opportunity to seek

permanent employment with HMA because of her race. The United States Supreme Court has found that changes in employment status "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" constitute adverse employment actions. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The court finds that Plaintiff McCurdy's assignment termination and subsequent removal from the "good-to-go" pool of candidates for permanent HMA positions constitute adverse employment actions; she, therefore, may state a prima facie case of racial discrimination on the basis of her termination, but only if she can show that similarly situated Caucasian employees were treated differently.

### 2. Similarly Situated Caucasian Employees Treated Differently

Plaintiff McCurdy asserts that HMA and TRI treated Caucasian employees differently, because HMA and TRI disciplined her more frequently, unfairly assigned her certain tasks, gave her poor performance evaluations, and ultimately terminated her employment, all because of her race. The court has already rejected all but Plaintiff McCurdy's termination as a possible avenue for recovery for racial discrimination; she, therefore, must establish that similarly situated non-minority employees were treated more favorably.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects." *Hollifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Indeed, '[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Embry v. Callahan Eye Found. Hosp.*, 147 Fed. Appx. 819, 829, 2005 WL 2009046, at *8 (11th Cir. 2005) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091

(11th Cir. 2004)).

      Plaintiff McCurdy has proffered no evidence of non-minority employees who had received two quality defect warnings and poor performance evaluations but remained employed with Defendants. Nor has she proffered any evidence of non-minority employees performing poor quality work but not receiving a quality defect warning. In fact, in her brief opposing the Defendants' motion for summary judgment, Plaintiff McCurdy ignores her burden of establishing a prima facie disparate treatment claim entirely. Instead, she skips to the issue of pretext and alleges, but offers no evidence, that her supervisors were more lenient with the non-minority employees; that her supervisors gave the non-minority employees the easier jobs within the work group; and that her poor performance evaluations and quality defect warnings, which were allegedly more critical than those of her non-minority counterparts, resulted in her termination. The court does not even reach the question of pretext until a plaintiff has established a prima facie case and the defendant has proffered legitimate, nondiscriminatory reasons for the adverse employment action. Furthermore, the court has already determined that her performance evaluations did not constitute an adverse employment action. The court also finds that mere allegations of racial animus without supporting evidence are insufficient to sustain the Plaintiff's evidentiary burden.

      The court determines that Plaintiff has not established a prima facie case of racial discrimination, because she has not shown that similarly situated comparators were treated more favorably. As such, the court finds that HMA and TRI are entitled to judgment as a matter of law as to the Plaintiff's disparate treatment claim.

## II.     Retaliation

Plaintiff McCurdy also asserts that, because she reported her claims of racial discrimination, HMA and TRI retaliated against her by terminating her and refusing to hire her as a permanent HMA employee. The court analyzes claims of retaliation for engaging in a protected activity under the *McDonnell Douglas* burden-shifting framework. *Bernard v. SSA Security, Inc.*, 2008 WL 4823987, at *2 (11th Cir. 2008). Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case" of retaliation. 411 U.S. at 802.

### A.     Prima Facie Case

To establish a prima face case of retaliation under Title VII, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two events." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (internal quotation marks omitted). HMA and TRI do not dispute that Plaintiff McCurdy suffered an adverse employment action when she was terminated. HMA and TRI do dispute that she engaged in statutorily protected expression by complaining about Burton's alleged racism and that a causal connection exists between her complaints and her termination.

#### 1.     Statutorily Protected Expression

To constitute "statutorily protected expression," a plaintiff need not establish an underlying discrimination claim; instead, the plaintiff must show that she had a "good faith, reasonable belief" that she was the victim of an unlawful employment practice. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001). Plaintiff McCurdy

13

asserts that her complaints to Yarbrough about Burton's alleged racism were in good faith and based upon a reasonable belief. She complained that Burton referred to African Americans using derogatory language, that Burton scheduled African Americans to work more strenuous rotations while allowing Caucasians to perform the easier jobs, and that Burton disciplined her differently than her Caucasian co-workers. Yarbrough himself spoke with Burton about her concerns, prompting Burton to apologize to McCurdy. Taking the evidence in the light most favorable to the plaintiff, the court concludes that Plantiff McCurdy was engaged in statutorily protected expression when she complained about Burton's alleged racism.

### 2. Causal Link

"The causal link element is construed broadly so that a plaintiff merely has to prove the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation marks omitted). Generally, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection," but to satisfy this showing, a plaintiff must establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000). Causation, however, may be established in discrimination cases where the decision maker followed a biased recommendation without independent investigation, such that the decision maker was "a mere conduit . . . to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir.1999).

HMA and TRI assert that the TRI decisionmakers who decided to terminate Plaintiff

McCurdy's assignment at HMA were not aware of her complaints to Yarbrough about Burton's racism. Plaintiff McCurdy asserts that she complained not only to Yarbrough, but also to TRI about Burton's racism. Plaintiff McCurdy, however, cannot remember the name of the TRI associate to whom she complained about Burton's racism, and TRI denies that it had any knowledge about her complaints of racism. Nevertheless, TRI based its performance evaluations and its decision to terminate Plaintiff McCurdy's assignment at HMA on information provided by Yarbrough and Burton, who did know of Plaintiff's complaints. Plaintiff McCurdy asserts that performance evaluation information provided by Yarbrough and Burton would have been biased as a result of her complaints about Burton's racism and her threats to take her complaints to a higher HMA company official. The court notes that she complained about Burton's conduct on May 31, two days before TRI terminated her assignment with HMA.[1]

Because information on which the decision to terminate was based came directly from the two people who knew about McCurdy's protected expression, and because her termination came on the heels of her most recent complaint about Burton's conduct, Plaintiff McCurdy has met her burden by creating at least a question of fact as to the causal connection requirement. The court finds that genuine issues of material fact remain as to the issue of a causal link between Plaintiff McCurdy's complaints and her termination. Accordingly, the court determines that summary judgment for HMA and TRI on Plaintiff McCurdy's retaliation claim would be improper.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the

---

[1] The court also notes that on May 24, just a week before McCurdy's complaint and subsequent termination, HMA had conditionally offered her a permanent position and had placed her in its "good-to-go" pool of candidates.

Defendants' motion for summary judgment. A separate order to that effect will be entered simultaneously.

Specifically, the court GRANTS the Defendants' motion for summary judgment as to Plaintiff McCurdy's racial discrimination claim, because Plaintiff McCurdy has not carried her burden under *McDonnell Douglas* on those claims.  The court, therefore, DISMISSES WITH PREJUDICE Plaintiff McCurdy's racial discrimination claim.

The court DENIES the Defendants' motion for summary judgment as to Plaintiff's retaliation claim, because the court finds that genuine issues of material fact remain as to the issue of a causal link between Plaintiff McCurdy's complaints and her termination.

DATED this 15th day of January, 2009.

*/s/ Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE